UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                             Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                                  Not Present

**PROCEEDINGS:**     **(IN CHAMBERS) ORDER GRANTING PLAINTIFFS' APPLICATION FOR DEFAULT JUDGMENT (Doc. 65)**

Before the Court is Plaintiffs Consumer Financial Protection Bureau and the Acting Superintendent of Financial Services of the State of New York's application for entry of default judgment against Defendant Steven Covey. (App., Doc. 65.) Previously, the Court ordered Plaintiffs to submit supplemental briefing in support of its Application. (Suppl. Briefing Order at 1-2, Doc. 92.) Thereafter, Plaintiffs submitted a declaration by Carmen Christopher. (Suppl. Christopher Decl., Doc. 94.) Having read and considered all the relevant briefing, the Court GRANTS Plaintiffs' Application.

**I.    BACKGROUND**

Plaintiffs' Complaint alleges the following facts:

Sometime in or prior to 2011, Defendants Edward Lichtig and Covey created and established Defendants Pension Funding, LLC and Pension Income, LLC (together, "PF-PI"). (Complaint ¶ 63, Doc. 1.) Covey had previously operated Structured Investments Co., LLC, ("SICO") a company alleged to be PF-PI's "de facto" predecessor. (*Id.*) Through Covey, SICO transferred its website, telephone number, and a computer program to PF-PI. (*Id.*) PF-PI operated out of an office located at SICO's former address and hired several of SICO's key employees. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS	Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

From 2011 until approximately December 2014, PF-PI sold and offered "tailored financial programs" to consumers. (*Id.* ¶¶ 16-17.) As part of these programs, PF-PI "purported to purchase, through lump-sum payments, eight years of 'future cash flow' from consumers' pension payments." (*Id.* ¶ 16.) That is, participants in these programs would receive an upfront, lump-sum payment and, in exchange, agreed to turn over eight years of future pension payments. Covey had previously devised the structure of these pension-related transactions while at SICO. (*Id.* ¶ 63.) Covey served as the "Site Manager" of Pension Funding. (*Id.*) Covey also performed various consumer-related functions on behalf of PF-PI. (*Id.*)

PF-PI marketed their products to pensioners, with a focus on military veterans. (*Id.* ¶ 18.) Potential customers were directed to PF-PI's website, which, in part, represented that:

> [t]hrough a type of money purchase pension plan, Pension Funding LLC transacts a pension buyout and advances you the cash when needed. This pension buyout is not a pension loan; it is a pension lump sum.

(*Id.* ¶ 19.) The website further asserted that "a pension buyout is a more convenient and less expensive option for financing unexpected purchases than a credit card or regular loan." (*Id.* ¶ 20.) According to PF-PI:

> [n]owhere else can you leverage your military, civil service or corporate pension to secure near-immediate cash. Not at a bank. Banks don't recognize pensions as collateral. Not on a credit card. High interest rates make cash advances too expensive. You can sell 8 years of your future pension stream. At the end of the term, your full pension payments resume back to you. And we don't require any life insurance or report this as a debt to the credit reporting agency. That is our very big advantage.

(*Id.* ¶ 21.) More specifically, PF-PI's website asserted that the cost to consumers of these products "can be as little as 13 percent," a rate that is significantly below what is charged on many credit cards. (*Id.* ¶ 23.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                                      Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

Prospective consumers contacted PF-PI and initiated the application process either through a website or by calling a toll-free number. (*Id.* ¶¶ 24-25.) In these preliminary communications, PF-PI represented that the product was not a loan and carried no interest rate. (*Id.* ¶ 26.) PF-PI further asserted that the products did not require consumers to purchase life insurance because the companies obtained policies on their behalf. (*Id.*) PF-PI also advised potential consumers that entering into a pension-related transaction would have no adverse effect on their credit scores. (*Id.*)

After completing the application, consumers received a form letter explaining the transaction and the underwriting process. (*Id.* ¶ 28.) The letter at once repeated many of the same claims concerning the nature of the product and the absence of an interest rate, and also reiterated the favorable comparison between this pension-related product and other types of credit. (*Id.* ¶¶ 29-30.) The letter also provided potential consumers with three quotes for potential lump-sum payments. (*Id.* ¶ 31.) Included as an attachment to the letter was a document entitled, "Financial Information Form," which requested certain financial and employment information from the consumer. (*Id.* ¶ 32.) After a consumer submitted the requested information, PF-PI's underwriting department reviewed the application and, if approved, sent consumers a second set of forms, including a "Monthly Home Budget," a "Personal Banking Information Form," and a "Preliminary Underwriting Questionnaire." (*Id.* ¶ 33.) Only after these materials had been received and reviewed, would PF-PI make a bona fide offer to consumers. (*Id.* ¶ 36.)

If a consumer qualified, PF-PI would offer him or her a lump-sum payment based upon a minimum monthly payment of $500 for a standard term of ninety-six months. (*Id.* ¶ 37.) A typical lump-sum payment amounted to somewhere between 41 percent and 49 percent of the consumer's pledged future pension payments. (*Id.* ¶¶ 38-39.) PF-PI explained to consumers that the offer represented the present value of the anticipated future pension payments and was calculated based on a "discount rate." (*Id.* ¶ 38.) In reality, however, a consumer's lump-sum payment was even less than these anticipated amounts because the first month's repayment was automatically deducted. (*Id.* ¶ 40.)

In order to fund these lump-sum payments, PF-PI solicited investors, often retirees, to invest in the pension-related transactions. (*Id.* ¶ 41.) In exchange for an investment sufficient to fund a lump-sum payment plus the related fees, PF-PI promised

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS						Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

___

investors a six percent annual return. (*Id.* ¶ 42.) To facilitate payments between consumers and investors, PF-PI opened, or assisted consumers in opening, checking accounts in a given consumer's name. (*Id.* ¶ 52.) PF-PI would cause each consumer's monthly pension payments to be deposited into the checking account. (*Id.*) Thereafter, PF-PI facilitated payments to investors from these checking accounts or, alternatively, through PF-PI's own accounts. (*Id.* ¶ 52.) At no time did PF-PI ever obtain a money transmitter license from the New York State Department of Financial Services or its predecessor agency. (*Id.* ¶ 53.)

According to the Complaint, over the life of a transaction, consumers paid an average effective annual interest rate of 28.56 percent, which includes various commissions, fees accruing to PF-PI, and contributions to a "death reserve fund." (*Id.* ¶¶ 46-47.) However, this aggregate rate was never disclosed to consumers. (*Id.* ¶ 48.) Moreover, PF-PI also kept "any additional funds that remained after deducting fees and paying the lump sums to consumers, as well as any funds in the reserve funds that were not needed to pay investors." (*Id.* ¶ 49.) As alleged in the Complaint, "PF-PI made its entire profit and deducted all fees at the inception of each deal." (*Id.* ¶ 50.)

Plaintiffs filed the instant Complaint on August 20, 2015. (Complaint, Doc. 1.) On December 23, 2015, after Covey failed to timely answer the Complaint, the clerk entered a default against him. (Default, Doc. 59.) On February 10, 2016, the Court entered a stipulated final judgment against Defendants Lichtig, Rex Hofelter, Pension Funding, and Pension Income. (Final Judgment, Doc. 69.) Separately, Plaintiffs brought the instant Application as to Covey. (App., Doc. 65.)

## II. <u>LEGAL STANDARD</u>

Under Rule 55 of the Federal Rules of Civil Procedure, entering a default judgment is a two-step process. *See* Fed. R. Civ. P. 55; *see also Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). Prior to entry of a default judgment, there must be an entry of a default. *See* Fed. R. Civ. P. 55. Upon entry of a default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party. Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "On the other hand, a defendant is not held to admit facts that

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 15-1329-JLS | Date: July 11, 2016 |
| Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al. | |

are not well-pleaded or to admit conclusions of law." *See Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012) (citation omitted). "[I]t follows from this that facts . . . not established by the pleadings of the prevailing party, or claims . . . not well-pleaded, are not binding and cannot support the judgment." *Id.* (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

A district court has discretion to grant or deny an application for default judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has set forth seven factors to be considered by courts assessing the propriety of a default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72.

### III. DISCUSSION

#### A. Local Rule 55-1

Local Rule 55-1 provides that an application for a default judgment must be accompanied by a declaration that (1) identifies the party in default and the pleading in relation to which the default was entered, (2) addresses whether the defaulting party is a minor or incompetent person, (3) confirms that the Servicemembers Civil Relief Act does not apply, and (4) makes clear the defendant received notice of the default. *See* C.D. Cal. R. 55-1. Here, the supplemental declaration of Carmen Christopher addresses Rule 55-1's requirements (Suppl. Christopher Decl. ¶ 4), including, specifically, the deficiencies identified in the Court's prior order (Suppl. Briefing Order at 2.) Accordingly, the Court finds that the requirements of Rule 55-1 are satisfied.

#### B. Application of the *Eitel* Factors

The Court considers the *Eitel* factors in turn.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                                   Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

### 1. Prejudice to Plaintiff

The first *Eitel* factor considers whether Plaintiffs will suffer prejudice if a default judgment is not entered. *See TVB Holdings (USA), Inc. v. eNom, Inc.*, No. SACV 13-624-JLS (DFMx), 2014 WL 3717889, at *2 (C.D. Cal. July 23, 2014). "A plaintiff suffers prejudice when denying default judgment would leave plaintiff without a remedy." *See Coach Servs., Inc. v. YNM, Inc.*, No. 2:10-CV-02326-JST (PLAx), 2011 WL 1752091, at *2 (C.D. Cal. May 6, 2011). Here, because Covey is aware of the litigation but has nevertheless opted not to participate, the Court concludes that absent default judgment, Plaintiffs would be left without a remedy. Therefore, this factor favors an entry of default judgment against Covey.

### 2. Merits of Plaintiff's Claims

The second and third *Eitel* factors look at the merits of plaintiff's substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. "To warrant default judgment, the allegations in the Complaint must be sufficient to state a claim upon which Plaintiff can recover." *Coach Servs.*, 2011 WL 1752091 at *3. Here, Plaintiffs' Complaint asserts the following seven causes of action against Covey: (1) unfair acts in violation of the Consumer Financial Protection Act, (2) deceptive acts or practices in violation of the CFPA, (3) abusive acts or practices in violation of the CFPA, (4) usury in violation of New York General Obligations Law § 5-501, (5) false and misleading advertising of loans in violation of New York Banking Law § 350, (6) intentional misrepresentation of a material fact in violation of New York Financial Services Law § 408, and (7) unlawfully transmitting money without a license in violation of New York Banking Law § 641. (Complaint ¶¶ 66-111.) The Court considers the claims in turn.

#### a. *CFPA Violations*

The CFPA prohibits a "covered person" from engaging in "any unfair, deceptive, or abusive act or practice." 12 U.S.C. §§ 5531(a), 5536(a)(1)(B). The term "covered person" is defined in the CFPA to include any company that "engages in offering or

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 15-1329-JLS | Date: July 11, 2016 |
| Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al. | |

providing a consumer financial product or service[.]" *Id.* § 5481(6)(A). In turn, a "financial product or service" is defined to include "extending credit and servicing loans, including acquiring, purchasing, selling, brokering, or other extensions of credit" and "transmitting or exchanging funds, or otherwise acting as a custodian of funds or any financial instrument for use by or on behalf of a consumer." *Id.* § 5481(15)(A)(i)-(iv). Based on the allegations in the Complaint, the Court concludes that Defendants Pension Funding and Pension Income – by underwriting and facilitating the purchase of future pension streams (Complaint ¶ 33), opening checking accounts on behalf of consumers (*id.* ¶ 52), facilitating money transfers to and from these accounts (*id.*), and orchestrating the purchase and sale of pension-related products with an effective interest rate of 28.56 percent (*id.* ¶ 47) – are "covered persons" under the CFPA. Likewise, Covey – because he is an employee of Pension Funding with managerial responsibility (*id.* ¶ 63) – is a "related person" under the CFPA and, therefore, is also deemed to be a "covered person." *See* 12 U.S.C. § 5481(25)(B) (deeming a "related person" to be a "covered person" under the CFPA).

   In relevant part, the CFPA prohibits any "covered person" from engaging in "any unfair, deceptive, or abusive act or practice." *Id.* § 5536(a)(1)(B). An "unfair" act is one that "causes or is likely to cause substantial injury to consumers," so long as that injury "is not reasonably avoidable" and "is not outweighed by countervailing benefits to consumers or competition." *Id.* § 5531(c)(1)(A)-(B). An "abusive" act or practice is one that "materially interferes with the ability of a consumer to understand a term or condition of a consumer financial product or service" or, in the alternative, which "takes unreasonable advantage of . . . a lack of understanding on the part of the consumer of the material risks, costs or conditions of the product or service[.]" *Id.* § 5531(d)(1)-(2)(a). Finally, an act is "deceptive" if "there is a representation, omission, or practice that . . . is likely to mislead consumers acting reasonably under the circumstances . . . and the representation, omission, or practice is material." *Consumer Fin. Proc. Bureau v. Gordon*, No. 13-56484, 2016 WL 1459205, at *8 (9th Cir. Apr. 14, 2016) (internal quotations and citations omitted).

   Here, PF-PI "failed to disclose or misrepresented the interest rate associated with the loans and failed to disclose or denied the existence of fees." (Complaint ¶ 68.) These acts and practices "were likely to cause substantial injury to consumers because they

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                                           Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

prevented consumers from understanding the costs of the loans in question and from comparing them to potential alternatives." (*Id.* ¶ 69.) Specifically, according to the Complaint, PF-PI repeatedly represented that the pension-related products "did not have an interest rate associated with it," "had costs associated with it that were comparable to interest rates as low as 13%, or less than 18-24%," and "did not require life insurance[.]" (*Id.* ¶ 74.) However, "[t]hese material misrepresentations were false and misleading." (*Id.* ¶ 75.) Based on these allegations, the Court concludes that PF-PI, and by extension Covey, engaged in "unfair," "deceptive," and "abusive" acts in violation of the CFPA.

Accordingly, the Court finds that the Complaint alleges facts sufficient to support the first, second, and third causes of action. Therefore, the second and third *Eitel* factors favor entry of default judgment as to Plaintiffs' CFPA causes of action.

b.     *New York State Law Violations*

In addition to the three CFPA claims, Plaintiffs also assert four causes of action under New York state law. (Complaint ¶¶ 88-111.) Plaintiffs' fourth cause of action alleges usury in violation of New York General Obligations Law § 5-501 and New York Banking Law § 14-a(1). (*Id.* ¶ 89.) Taken together, these provisions prohibit any extension of credit with an interest rate that exceeds sixteen percent. *See* N.Y. Gen. Oblig. § 5-501 (McKinney 2011); N.Y. Banking Law § 14-a(1) (McKinney 2012). The Complaint alleges that "[i]n the course of making loans to consumers in New York, Defendants repeatedly charged and received interest in excess of 16%," in violation of these provisions. (Complaint ¶ 91.) In fact, according to the Complaint, "the transactions had an effective annual interest rate of 28.56%." (*Id.* ¶ 47.) Based on these allegations, the Court concludes Plaintiffs adequately state a cause of action for usury.

Additionally, Plaintiffs' fifth cause of action alleges that PF-PI violated New York Banking Law § 350 by "representing to consumers that they were selling their pensions, rather than obtaining a loan, and by omitting in their advertisements to consumers the applicable interest rates, fees, and life insurance requirement" – when, in fact, these claims were "false, misleading, and deceptive regarding the rates, terms, and conditions for the loaning of money or credit[.]" (Complaint ¶ 96.) Likewise, Plaintiffs' sixth cause of action alleges PF-PI violated New York Financial Services Law § 408 when the

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SACV 15-1329-JLS | Date: July 11, 2016 |
| Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al. | |

companies "intentionally misrepresented that they purchased pension income when, in fact, they were engaged in illegal lending activity and lending money at usurious rates." (*Id.* ¶ 100). Section 350 prohibits the advertising, printing, displaying, publishing, or distributing of "any statement or representation with regard to the rates, terms, or conditions for loaning of money, credit, goods, or things in action which is false, misleading or deceptive[.]" N.Y. Banking § 350(1)(a) (McKinney 2011). Similarly, § 408 makes unlawful any intentional fraud or misrepresentation of material fact with respect to a financial product or service. *See* N.Y. Fin. Servs. Law § 408(a)(1)(A). Based on the allegations in the Complaint, the Court concludes Plaintiffs adequately state causes of action for violations of Banking Law § 350 and Financial Services Law § 408.

Finally, Plaintiffs' seventh cause of action alleges PF-PI "received or transmitted money from consumers' accounts to investors' accounts, often through PF-PI's accounts" without obtaining the necessary New York state licenses. (Complaint ¶¶ 106-108.) Specifically, New York Banking Law § 641 prohibits individuals and businesses from "receiving money for transmission or transmitting the same, without a license therefor." N.Y. Banking Law § 641. Here, the Complaint asserts that "PF-PI opened or assisted consumers in opening checking accounts in consumers' names" and then proceeded to "mov[e] pension payments from those accounts to investors' accounts . . . or [move] pension payments from those accounts into accounts held by Pension Income[.]" (Complaint ¶ 52.) Based on these allegations, the Court concludes Plaintiffs adequately state a cause of action for violations of Banking Law § 641.

Accordingly, the Court finds Plaintiffs have pled sufficient facts to support their four causes of action arising under New York state law. As a result, the second and third *Eitel* factors also favor an entry of default judgment as to their state law claims.

### 3. Amount of Money at Issue

The fourth *Eitel* factor examines the amount of money at stake relative to the gravity of the defendant's conduct. *Wecosign*, 845 F. Supp. 2d at 1082 (citation omitted). Here, Plaintiffs' Complaint requests that the Court "award damages or other monetary relief against Defendants," "order disgorgement of ill-gotten revenue," "impose civil penalties against Defendants," and "order Defendants to pay Plaintiffs' costs and fees[.]"

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                                                         Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

(Complaint at 22.) However, in the instant Application, the only monetary relief sought by Plaintiffs is "disgorgement of the money [Covey] made as a result of PF-PI's illegal acts and practices." (App. at 10.) In a declaration from Carmen Christopher submitted by Plaintiffs in support of their Application, Christopher asserts that "[i]n limited financial disclosures provided by Defendant Covey, he admits he received the following income from Pension Funding, LLC: $107,366 in 2012, $339,038 in 2013, and $131,778 in 2014 (through October 20, 2014)." (Christopher Decl. ¶ 8.) Based on these amounts, Plaintiffs seek disgorgement from Covey of $578,182. (*Id.*) The Court finds that disgorgement of the money that Covey unlawfully earned is a reasonable measure of, and is proportional to, Covey's misconduct. *See, e.g.*, *Commodity Futures Trading Comm'n v. White Pine Trust Corp.*, No. 04CV2093 J(NLS), 2007 WL 1754819, at *6 (S.D. Cal. Apr. 20, 2007) (holding that disgorgement of more than $14,000,000 is reasonable where the amount reflects the money misappropriated by the defendant). Therefore, the fourth *Eitel* factor likewise favors entry of default judgment against Covey.

### 4. Potential Disputes Concerning Material Facts

The fifth *Eitel* factor "examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Wecosign*, 845 F. Supp. 2d at 1082 (citation and internal quotations omitted). "Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote." *Id.* Here, for many of the same reasons that Plaintiffs' Complaint adequately supports the claims alleged, the Court concludes that there is no meaningful risk that genuine disputes of material fact are likely to arise. Moreover, the Court notes that Covey is aware of this litigation (Christopher Decl. ¶¶ 5-6), yet opted not to participate and in doing so admitted the facts alleged. Therefore, the fifth *Eitel* factor likewise favors an entry of default judgment.

### 5. Excusable Neglect

This factor considers whether defendant's default may have been the product of excusable neglect. *Wecosign*, 845 F. Supp. 2d at 1082. "This factor favors default

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                    Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

___

judgment when the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit." *Id.* Here, Covey was served with the Complaint, corresponded with Plaintiffs in connection with this action, and participated in a telephone call to discuss potential avenues for resolving the litigation. (Christopher Decl. ¶ 6.) Thereafter, Covey became unresponsive and failed to participate in the litigation. (*Id.*) As a result, there is very little risk that Covey's default is the product of excusable neglect. Accordingly, this factor also favors default judgment.

### 6. Public Policy

The last *Eitel* factor examines whether public policy, which favors deciding cases on the merits, prevents the Court from entering default judgment. *See Wecosign*, 845 F. Supp. 2d at 1083. Although the Court accepts the importance of resolving cases on the merits, Rule 55(a) expressly permits cases to be decided before the merits are heard where the defendant fails to appear. *Id.* (citation omitted). Here, where Covey was aware of the action but nevertheless chose not to meaningfully participate therein, a default judgment is appropriate.

### 7. Conclusions Regarding *Eitel* Factors

After careful consideration, the Court finds that each of the *Eitel* factors strongly favors entry of a default judgment against Covey.

## IV. **REMEDIES**

Consistent with the remedies requested in the Complaint, Plaintiffs seek a permanent injunction "banning Defendant Covey from engaging in activities related to consumer credit and loans as well as activities related to financial products or services in, or to consumers in, the State of New York[.]" (App. at 11.) Plaintiffs also seek additional types of injunctive relief "to further protect consumers" and to harmonize the terms of the injunction against Covey with the injunction previously entered against the other Defendants. (*Id.*) Such relief is warranted pursuant to 12 U.S.C. § 5564(a), which

___

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SACV 15-1329-JLS                                                      Date: July 11, 2016
Title: Consumer Financial Protection Bureau et al. v. Pension Funding, LLC et al.

provides that, "[i]f a person violates a Federal consumer financial law," CFPB may seek "all appropriate legal and equitable relief including a permanent or temporary injunction as permitted by law." 12 U.S.C. § 5564(a). Here, because the Court finds that Covey has violated the CFPA, injunctive relief is warranted.

Separately, Plaintiffs seek disgorgement from Covey of $578,182 in order to prevent him from "profiting from his misdeeds and to discourage him from starting up yet another problematic pension-advance company[.]" (App. at 11-12.) In the Court's prior order, it took issue with the single declaration submitted in support of Plaintiffs' disgorgement request because the declaration referenced, without actually providing, certain "limited financial disclosures" made by Covey to the CFPB. (Christopher Decl. ¶ 8.) As that declaration made clear, these documents formed the entire evidentiary basis of Plaintiffs' request for disgorgement in the amount of $578,182. (*Id.*) Plaintiffs have now submitted these records to the Court. (Suppl. Christopher Decl., Ex. 5, "Covey Financial Disclosures," Doc. 94-5.) In these disclosures, which are signed and initialed by Covey (*id.* at 20), he represents that he received income from Pension Funding in the following amounts: (1) $107,366 in 2012, (2) $339,038 in 2013, and (3) $131,778 in 2014 (*id.* at 4).

Based on the evidence submitted, the Court finds that Plaintiffs are entitled to disgorgement in the amount of $578,182. Additionally, the Court enters Plaintiffs' requested injunctive relief against Covey.

**V.   CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiffs' Application. In a final judgment entered concurrently herewith, the Court AWARDS Plaintiffs' $578,182 in disgorgement and enters a permanent injunction against Covey.

Initials of Preparer:  tg