1  ALLEN MATKINS LECK GAMBLE
       MALLORY & NATSIS LLP
2  DAVID R. ZARO (BAR NO. 124334)
   TIM C. HSU (BAR NO. 279208)
3  865 South Figueroa Street, Suite 2800
   Los Angeles, California 90017-2543
4  Phone:  (213) 622-5555
   Fax:  (213) 620-8816
5  E-Mail:  dzaro@allenmatkins.com
              thsu@allenmatkins.com
6
   ALLEN MATKINS LECK GAMBLE
7      MALLORY & NATSIS LLP
   EDWARD G. FATES (BAR NO. 227809)
8  One America Plaza
   600 West Broadway, 27th Floor
9  San Diego, California 92101-0903
   Phone:  (619) 233-1155
10 Fax:  (619) 233-1158
   E-Mail:  tfates@allenmatkins.com
11
   Attorneys for Receiver
12 KRISTA L. FREITAG

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15                   SOUTHERN DIVISION

16 | Consumer Financial Protection Bureau and Linda A. Lacewell, Acting Superintendent of the New York State Department of Financial Services, | Case No. 8:15-cv-1329 |

17

18                                          **NOTICE OF MOTION AND MOTION TO CONCLUDE RECEIVERSHIP AND FOR ORDER: (1) AUTHORIZING RECEIVER TO MAKE FINAL DISTRIBUTIONS TO APPROVED CLAIMANTS AND ESTABLISH RESERVE; (2) APPROVING FINAL ACCOUNTING AND REPORT; (3) APPROVING DISPOSITION OF BOOKS AND RECORDS; AND (4) CONDITIONALLY DISCHARGING RECEIVER; RECEIVER'S FINAL ACCOUNTING AND REPORT**

                Plaintiffs,

           v.

Pension Funding, LLC; Pension Income, LLC; Steven Covey; Edwin Lichtig; and Rex Hofelter,

                Defendants.

Date:      May 3, 2019
Time:      10:30 a.m.
Ctrm.:     10A
Judge:     Hon. Josephine L. Staton

# **TABLE OF CONTENTS**

**Page**

I.    RECEIVER'S FINAL ACCOUNTING AND REPORT ................................. 6

    A.    Procedural History, Factual Background and Business
        Assessment .................................................................................... 6

    B.    Receiver's Forensic Accounting ............................................... 9

    C.    Asset Recovery .......................................................................... 10

    D.    Receiver Reporting and Communications ............................. 12

    E.    Receivership Accounting .......................................................... 13

    F.    Claims and Interim Distribution Process ............................. 13

II.   CLOSING MATTERS ...................................................................... 14

    A.    Establishment of Reserve, Payment of Administrative
        Expenses and Proposed Final Distribution ............................ 14

        1.    Establishment of Reserve ........................................ 14

        2.    Administrative Expenses ........................................ 14

        3.    Proposed Final Distribution .................................... 15

    B.    Destruction of Records .............................................................. 16

    C.    Discharge of Receiver ............................................................... 17

III.  ARGUMENT .................................................................................... 17

    A.    Broad Equitable Powers of the Court .................................... 17

    B.    Conclusion of Receivership and Discharge of Receiver ..................... 18

IV.   MEET AND CONFER ...................................................................... 20

V.    CONCLUSION ................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.,*
    205 F.3d 1107 (9th Cir. 1999)...................................................................... 18

*First Empire Bank-New York v. FDIC,*
    572 F.2d 1361 (9th Cir. 1978)...................................................................... 19

*SEC v. Capital Consultants, LLC,*
    397 F.3d 733 (9th Cir. 2005)........................................................................ 18

*SEC v. Elliot,*
    953 F.2d 1560 (11th Cir. 1992)..................................................................... 18

*SEC v. Hardy,*
    803 F.2d 1034 (9th Cir. 1986)...................................................................... 18

*SEC v. Wencke,*
    622 F.2d 1363 (9th Cir. 1980)...................................................................... 18

**TO THE HONORABLE JOSEPHINE L. STATON, JUDGE OF THE UNITED STATES DISTRICT COURT, AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that on May 3, 2019, at 10:30 a.m. in Courtroom 10A of the above-entitled Court, located at 411 West 4th Street, Santa Ana, California 92701-4516, Krista L. Freitag ("Receiver"), the Court-appointed permanent receiver for Defendants Pension Funding, LLC, Pension Income, LLC, and their subsidiaries, affiliates, and successors-in-interest, including PGR, LLC (collectively, "Receivership Entities"), will and hereby does move the Court to conclude the receivership and for an order, (1) authorizing Receiver to make final distributions to approved claimants and establish a reserve; (2) approving the final accounting and report; (3) approving disposition of books and records; and (4) conditionally discharging the Receiver ("Motion"). The Receiver and her counsel, Allen Matkins, have filed their final fee applications concurrently herewith. The Motion and all relevant pleadings are available at the Receiver's website, http://www.ethreeadvisors.com/cfpb-case-docs/.

**Procedural Requirements:** If you oppose this Motion, you are required to file your written opposition with the Office of the Clerk, United States District Court, 411 West 4th Street, Santa Ana, California 92701-4516, and serve the same on the undersigned not later than 21 calendar days prior to the hearing.

IF YOU FAIL TO FILE AND SERVE A WRITTEN OPPOSITION by the above date, the Court may grant the requested relief without further notice. This Motion is made following the conference of counsel pursuant to L.R. 7-3.

Dated: February 27, 2019

ALLEN MATKINS LECK GAMBLE
MALLORY & NATSIS LLP

By: _____/s/ Edward Fates_____
EDWARD G. FATES
Attorneys for Court-appointed
Receiver KRISTA L. FREITAG

LAW OFFICES
**Allen Matkins Leck Gamble
Mallory & Natsis LLP**

880879.02/SD

-4-

## MEMORANDUM OF POINTS AND AUTHORITIES

Krista Freitag, the Court-appointed Receiver herein, respectfully submits this Memorandum of Points and Authorities in Support of her motion to conclude the receivership and: (1) authorizing the Receiver to make final distributions to approved claimants and establish reserve; (2) approving the final accounting and report; (3) approving disposition of books and records; and (4) conditionally discharging the Receiver ("Motion").  The Receiver and her counsel have filed their final fee applications concurrently herewith.

The Receiver has completed management of all assets of the receivership estate.  As the receivership has progressed, more and more pensioners have paid off their lump sum advances.  At this point, the monthly collections have declined to a point where they are not expected to exceed the monthly administrative expenses of the receivership.  As there is no further material net benefit to be gained from maintaining the receivership, the Receiver requests that she be discharged and the case be closed, effective upon completion of the final closing tasks as described in Section II below.

The Receiver recovered a total of $5.04 million,[1] returned nearly $700,000 of pensioner lump sum overpayments,[2] and spent approximately $55,000 on preservation and maintenance of assets, for a net recovery of approximately $4.29 million.  The Receiver's fees and costs, if all fee applications are approved, amount to approximately $518,000, or about 10% of the total recovery.  Administrative fees and costs for the Receiver's counsel amount to approximately $381,000, or about 8% of the total recovery.  If all fee applications are approved, the Receiver will have returned approximately $700,000 or 14% of the total recovery to

---

[1]  Recovery may increase by up to $7,000 due to March through May 2019 pensioner loan payments.  While awaiting the hearing hereon, the Receiver intends to continue collection of these payments for the benefit of the investors.

[2]  These are amounts pensioners paid in excess of the lump sum advances they received.

pensioners who overpaid their lump sums, and will distribute nearly $3.4 million or approximately 67% of the total recovery to investors under the distribution plan approved by the Court on May 31, 2017 (the "Distribution Plan") (Dkt. 147). Investors with approved claims will, in total, recover approximately $13.8 million, which amounts to at least 55.875 cents on the dollar and on average about 57.2 cents for each dollar funded.

The relief sought herein will allow the Receiver to take the remaining steps necessary to conclude the receivership, including making final distributions to approved claimants.

## I.    RECEIVER'S FINAL ACCOUNTING AND REPORT

### A.    Procedural History, Factual Background and Business Assessment

This equity receivership arises from the Complaint for Violations of the Consumer Financial Protection Act and New York Banking and Financial Services Laws ("Complaint") (Dkt. No. 1) filed by the Consumer Financial Protection Bureau ("Bureau") and Superintendent of Financial Services of the State of New York ("Superintendent").  On August 20, 2015, the Bureau and Superintendent filed their Complaint against Defendants Pension Funding, LLC, Pension Income, LLC, Steven Covey, Edwin Lichtig, and Rex Hofelter.  The Complaint alleges that Defendants violated the Consumer Financial Protection Act of 2010 and New York state law by making "pension advances" to pensioners while (a) failing to disclose the transactions were loans, (b) failing to disclose or misrepresenting the interest rate associated with the loans, (c) making various other misrepresentations about the terms and/or benefits of the loans to pensioners, (d) charging interest rates to pensioners located in New York that exceeded the maximum rate allowed by New York law, and (e) engaging in the business of money transmitting without a money transmitter license.

On October 7, 2015, the Bureau and Superintendent moved for a preliminary injunction, appointment of a receiver, and other equitable relief ("Receiver Motion").

With the exception of Steven Covey, Defendants answered the Complaint on October 23, 2015.  Defendants then opposed the Receiver Motion on October 30, 2015.  At the hearing on the Receiver Motion held on December 18, 2015, the parties informed the Court that they had agreed upon a stipulation regarding preliminary injunction.  Dkt. No. 56.  The Joint Stipulation Requesting Entry of Stipulated Preliminary Injunction, Appointment of a Receiver, and Related Orders was filed on December 21, 2015.  Dkt. No. 57.  On January 8, 2015, the Court entered the Stipulated Preliminary Injunction, Appointment of a Receiver, and Related Matters (the "Appointment Order"), which appointed Krista L. Freitag ("Receiver"), as permanent receiver for Pension Funding, LLC, Pension Income, LLC, and their subsidiaries, affiliates, and successors-in-interest, including PGR, LLC (collectively, "Receivership Entities").  Dkt. No. 61.

In accordance with the Appointment Order and the law governing federal equity receiverships, upon her appointment, the Receiver promptly took steps to implement the terms and provisions of the Appointment Order, including (a) taking control of all accounts of the Receivership Entities, (b) imaging and preserving all electronic data of the Receivership Entities, (c) securing and taking possession of all hard copy records and documents of the Receivership Entities, and (d) investigating, issuing subpoenas, and gathering records as to the assets and potential claims of the Receivership Entities.

On January 22, 2016, the Court entered the Stipulated Judgment.  On March 1, 2016, the Receiver filed a Motion for Order in Aid of Receivership (Dkt. No. 71), seeking authority to engage Allen Matkins Leck Gamble Mallory & Natsis LLP ("Allen Matkins") as her general counsel, for relief from Local Rule 66-5 and 66-7 and to file interim reports and interim fee applications on a quarterly basis.  The Court held a hearing on April 13, 2016, at which time it stated it would grant the Receiver authority to engage Allen Matkins, grant relief from the requirement to serve notices by mail under Local Rule 66-7, extend the deadline under Local

Rule 66-5 to file a schedule of known creditors to July 2016, and allow the schedule of known creditors to be filed under seal.  The Receiver's application to file the schedule of known creditors under seal was filed concurrently with the Receiver's Second Interim Report (Dkt. No. 100).

On March 25, 2016, Defendant Rex Hofelter made the $40,000 payment required under the Stipulated Judgment.  Defendant Edwin Lichtig filed bankruptcy in the Northern District of California, then voluntarily dismissed his bankruptcy and paid the full $282,000 with interest to the Receiver on April 26, 2016.

Other than the assets and collections noted herein, the Receivership Entities did not have any business or generate any revenue.  Defendant Lichtig was solely in charge of the Receivership Entities at the time of the Receiver's appointment.  Therefore, the Receiver promptly assumed responsibility of all servicing operations and collections pursuant to the Appointment Order.

Because the Receivership Entities did not keep comprehensive or detailed books and records of the Pensioner and Investor accounts and transactions, the forensic accounting, which the Appointment Order directed the Receiver to conduct, was necessary to provide accurate information about the detailed sources and uses of funds of the Receivership Entities.  On October 19, 2016, the Receiver filed the Receiver's Forensic Accounting Report and Recommendations (Dkt. No. 116), orders on which were entered on December 14, 2016, and January 4, 2017.  Pursuant to the Court's December 14, 2016 order, the Receiver and her staff sent all third-party investors a letter detailing their net loss calculation, explaining the claims process, and providing them with 60 days to respond with any comments, questions, or concerns thereto.  These letters were sent by the end of December 2016.  With no disputes to the net loss calculations, at the end of the 60-day period, the Receiver worked with counsel to prepare the proposed allowed claims schedule, distribution plan, motion for approval thereof, and performed the calculations of proposed interim distributions to those with proposed allowed claims.

On April 25, 2017, the Receiver filed her Notice of Motion and Motion for, (a) Approval of Proposed Allowed Claim Amounts, (b) Approval of Distribution Plan, and (c) Authority to Make Interim Distributions ("Distribution Motion") (Dkt. No. 139), which was approved on May 31, 2017 (Dkt. No. 147).

### B.    Receiver's Forensic Accounting

The Receiver was ordered "to make an accounting, as soon as practicable, to this Court and the Plaintiffs of the status of each completed transaction related to Defendants' pension-advance products and to propose a methodology, subject to the Court's approval, for determining how to unwind or otherwise resolve any such transaction."  On October 19, 2016, the Receiver filed the Receiver's Forensic Accounting Report and Recommendations (Dkt. No. 116), which reflected analysis of approximately 300 bank accounts, orders on which were entered on December 14, 2016, and January 4, 2017.

To briefly summarize, according to Receivership Entities' bank and book records, during the period from August 2011 through early January 2016, PF-PI raised approximately $26 million from approximately 181 Investors and used another $1 million of company money to fund, among other things, (a) Lump Sum Payments to 286 Pensioners in the total amount of approximately $15.4 million, (b) commission and agency payments to third parties totaling approximately $2.2 million, (c) net payments to or for the benefit of Defendants Lichtig, Hofelter, and Covey totaling approximately $3.4 million, (d) PF-PI operations totaling approximately $2.7 million, (e) an investment in a loan secured by real estate in the net amount of $1.2 million, (f) monthly payments to Investors whose Pensioners defaulted on their contracts in the total amount of approximately $1.2 million, and (g) new contracts with Pensioners (with PF-PI as the Investor) totaling approximately $1 million.

Armed with the forensic accounting analysis, the Receiver was able to make recommendations with regard to unwinding or otherwise resolving the Pensioner and

1  Investor transactions.  The Receiver's recommendations are briefly summarized as
2  follows:

3       **Pensioner Transactions** - The Receiver recommended that collections from
4  Pensioners be limited to the "Lump Sums" they received in light of the strong
5  likelihood that Federal and New York laws were violated by Defendants in soliciting
6  and carrying out Pensioner transactions;

7       **Collections from Pensioners** - The Receiver recommended and sought
8  authority to begin collection activity on defaulted Pensioners, including, where and
9  only as appropriate, filing actions and enforcing judgments to collect the full Lump
10  Sums; and

11       **Investor Claims** - The Receiver recommended and set forth proposed
12  procedures for the efficient and effective review and administration of Investor
13  claims against the receivership estate.

14       The forensic accounting data was also used to validate claims and as a
15  foundation for the Receivers claims review and distribution plan further discussed
16  below.

17       **C.**    **Asset Recovery**

18       Through January 2016, prior to the Receiver's appointment, Investors were
19  generally paid the contractual monthly payment each month, whether or not their
20  Pensioners defaulted.  In the event of default, funds were used from the Receivership
21  Entity reserve accounts to cover the monthly shortfall.  As a result of the significant
22  amount of Pensioner defaults and bankruptcy filings, this shortfall coverage was
23  quickly draining reserve funds. The Receivership Entities also used approximately
24  $967,000 of company (reserve) account funds to invest in 12 Pensioner contracts.  As
25  such, the cash balance as of the receivership appointment was $526,664.

26       The Receivership Entities also held (and the Receiver recovered) a $1.2
27  (ultimately $1.1) million loan participation interest in a commercial note (in favor of

28

the lead lender) secured by a Commercial Deed of Trust over three separate pieces of real property:

- 22.21 acres of raw land in Fort Washington, Maryland;

- 28 single-family lots located in Clinton, Maryland; and

- 32 single-family lots located in Upper Marlboro, Maryland.

Since appointment and through February 26, 2019, the Receiver recovered and took possession of approximately $5.04 million. The Receiver will also continue to collect Pensioner payments until such time as the Court issues an order hereon, and anticipates collection of up to $7,000 in March through May 2019.

The table below summarizes the recoveries:

| Table 1:  Total Revenues from all Sources | | | |
|---|---|---|---|
| Pensioner Payments | | | $2,998,471 |
| | Pensioner Payments | 3,049,958 | |
| | Pensioner Payments Rejected | (51,487) | |
| Loan Principal and Interest Recovery | | | $1,133,831 |
| | Loan Principal | 1,000,000 | |
| | Loan Interest | 124,553 | |
| | Loan Sale Legal Fee Recovery | 9,278 | |
| | | | |
| Defendant Judgment Recovery | | | $322,108 |
| | Ed Lichtig | 282,108 | |
| | Rex Hofelter | 40,000 | |
| Unused Retainer Recovery | | | $37,116 |
| | Recovery – Bird Marella Law Firm Retainer | 9,743 | |
| | Recovery – David Arietta Law Firm Retainer | 14,084 | |
| | Recovery – Ramsey Law Firm Retainer | 7,472 | |
| | Recovery – GCA Law Partners Retainer | 5,817 | |

| Other Recovery | | | $549,858 |
|---|---|---|---|
| | Cash in Accounts at Takeover | 526,664 | |
| | Tax Refund | 17,804 | |
| | Interest and Miscellaneous | 5,390 | |
| Total Recovery[3] | | | $5,041,385 |

## D.    Receiver Reporting and Communications

Upon her appointment, the Receiver immediately took steps to implement the terms and provisions of the Appointment Order, including sending notices to all known Pensioners, Investors and other vendors of the Receivership Entities.  The Receiver initially sent approximately 400 letters to Pensioners and Investors, at their addresses reflected in the books and records of the Receivership Entities, to inform them of the case and her appointment as receiver, and direct them to the Receiver's website for information and updates.  The letter also provided the dedicated e-mail address and telephone line for Pensioner and Investor inquiries.

At the beginning of the receivership, the Receiver established a dedicated web page, which has provided case information, updates, and answers to frequently asked questions to investors and creditors.  The Internet address for the webpage is http://www.ethreeadvisors.com/cfpb-case-docs.  In addition, the Receiver is maintaining a dedicated e-mail address and telephone line for Pensioner and Investor inquiries and regularly has returned a significant volume of emails and phone calls from Investors and Pensioners.

The Receiver also filed detailed quarterly fee applications and accounting reports that kept investors and the Court advised as to the amount of money recovered, the financial position of the receivership estate, and efforts to recover funds for the benefit of Investor victims.

---

[3]   The Receiver anticipates an additional recovery of up to $7,000 of pensioner payments in March through May 2019.

**E.**    **Receivership Accounting**

The following summary reflects the Receivership Entities' consolidated operating cash balance as of February 26, 2019:

| Table 2:  Operating Cash Balance (Summary) | | |
|---|---|---|
| Total Revenues | | $5,041,385 |
| Disbursements (Non-Administrative) | | ($753,116) |
| | Income Tax, Asset Search, Bank Fees and Other Miscellaneous    54,588 | |
| | Pensioner Overpayment Return    698,528 | |
| Disbursements (Administrative) | | ($681,524) |
| | Receiver Legal Fees & Expenses    292,974 | |
| | Receiver Fees & Expenses    388,550 | |
| Interim Distributions (net) | | ($3,303,953) |
| | Investor Claim Distribution (June 2017)    2,904,158 | |
| | Investor Claim Distribution (February 2018)    439,933 | |
| | Claim Extinguished[4]    (40,138) | |
| Cash on Hand as of February 26, 2019 | | $302,792 |

**F.**    **Claims and Interim Distribution Process**

The total number of contracts reflected in the forensic accounting is 305 (282 third-party contracts, 11 insider contracts, and 12 PF PI contracts), all of which consisted of 286 different pensioners and 183 different investors (179 third parties and four insiders/PF PI).  There were several pensioners and investors who entered into multiple contracts.

---

[4]    After significant effort - efforts which included voiding and reissuing a check and months of attempted contact - an Investor never negotiated two interim distribution checks.  Thus, pursuant to the Distribution Plan approved by this Court, after more than 90 days passed and more than reasonable investigation and attempts to get the Investor to negotiate the checks had occurred, the Receiver extinguished the claim associated with the uncashed distributions and will distribute those funds to the other investors with allowed claims as part of the final distribution.

The Receiver worked diligently to arrive at a claims process that fairly evaluated the claims and a distribution plan that also fairly distributed funds pursuant to a rising tide methodology. On May 31, 2017, the Court granted the Receiver's motion for approval of the claims process, setting the deadline to submit claims to the Receiver as March 1, 2017. Ultimately, 171 unique third parties who invested a total of $24,300,450 had claims approved in the claims process. One $150,000 claim has since been extinguished as noted in the footnote below.

In June 2017, the initial $2.9 million in interim distribution checks were sent and then in February 2018, the $440,000 second interim distribution was initiated. The Receiver has successfully made a total of $3.3 million of interim distributions and will be distributing approximately $74,000 of additional funds in her final distribution. The exact amount of the final distribution will depend on pensioner payments received in March through May, 2019. Investors who successfully negotiated their interim distribution checks will be sent a final distribution. Ultimately, investors with approved claims who successfully negotiated their interim distribution checks will, in total, recover at least 55.875 cents on the dollar and on average about 57.2 cents for each dollar funded.

## II.    CLOSING MATTERS

### A.    <u>Establishment of Reserve, Payment of Administrative Expenses and Proposed Final Distribution</u>

#### 1.    <u>Establishment of Reserve</u>

As reflected in the table below, the Receiver seeks authority to set aside funds in reserve to pay non-administrative expenses in the amount of $11,170 and projected administrative expenses to conclude the receivership of up to $40,500, for a total reserve amount of $51,670.

#### 2.    <u>Administrative Expenses</u>

As also reflected in the table below, the Receiver seeks approval and authority to pay a total of $176,935 broken down as follows: (1) $15,613 for final fee

applications of the Receiver and Allen Matkins filed concurrently herewith, and (2) amounts previously held back from interim fee applications in the amount of $161,322.

### 3.    Proposed Final Distribution

As of February 26, 2019, the Receiver was holding cash in the total amount of $302,792.  Provided the Court approves the $51,670 of reserve funds ($11,170 of non-administrative expenses, plus $40,500 of projected administrative expenses), the payment of administrative fees in the amount of $176,935 ($15,613 incurred and not yet paid, plus $161,322 of holdbacks), approximately $74,000 will be available for final distribution to approved claimants in accordance with this Court's Claims Order.  That said, the Receiver expects that potentially up to $7,000 more will be available for final distributions depending on March through May 2019 collections.

The breakdown of cash on hand, as well as the interim distributions to be re-issued, the reserve, and administrative expenses, is as follows:

| Table 3:  Reserve, Administrative Expenses, Final Distribution Summary | | | |
|---|---|---|---|
| Cash Available for Final Distribution before Reserve and Administrative Costs | | | $302,792 |
| | Operating Cash on Hand 02/26/2019 | 302,792 | |
| Disbursements (Non-Administrative RESERVE) | | | (11,170) |
| | Projected Final Tax and Return Preparation Fees | 6,000 | |
| | Projected Storage and Document Destruction Fees | 170 | |
| | Contingency | 5,000 | |
| Disbursements (Administrative RESERVE) – Projected Fees and Expenses | | | (40,500) |
| | Projected Receiver Fees and Expenses | 28,500 | |
| | Projected Receiver Legal Fees and Expenses | 12,000 | |

| | | | |
|---|---|---|---|
| Disbursements (Administrative) – Fees and Expenses Incurred, Not Yet Paid | | | (15,613) |
| | Receiver Fees Incurred (Q4 2018) | 9,864 | |
| | Receiver Legal Fees Incurred (Q4 2018) | 5,749 | |
| Disbursements (Administrative) – Holdbacks | | | (161,322) |
| | Receiver 20% Holdback from Interim Fee Applications | 91,358 | |
| | Receiver Legal 20% Holdback from Interim Fee Applications | 69,964 | |
| Projected Minimum Cash Available for Final Distribution[5] | | | $74,187 |

All approved claimants who successfully negotiated their interim distributions will now receive a revised prorated amount as part of the final distribution. Pursuant to the Distribution Plan, in the event any approved claimants have not negotiated their final distribution check(s) and/or there are funds remaining in the Reserve account after 120 days after issuance of the final distribution has passed, then the Receiver shall pay such funds to the Bureau.

**B.    Destruction of Records**

The Receiver presently stores minimal files and records for the Receivership Entities' operations, personnel files, investor files, and miscellaneous documents, and electronic records. The Receiver has met and conferred with counsel for the Bureau and counsel for the Superintendent, neither of which wishes to take possession of the records or objects to them being destroyed. Continuing to store the records does not benefit the pensioners or investors and involves monthly expense. Accordingly,

---

[5]    The final distribution could increase up to an additional $7,000 depending upon March through May 2019 collections.

rather than reducing the funds available for distribution by amounts necessary to cover continuing storage costs, the Receiver seeks permission to destroy the records upon entry of the Discharge Order discussed below.

**C.    Discharge of Receiver**

The Receiver has successfully completed all work required under the Appointment Orders.  The Receivership Entities' assets were marshalled, protected, and successfully monetized, the accounting was completed, and the claims of investors and others were adjudicated.  As such, it is appropriate for the Receiver to ask the Court to enter an order discharging her upon the following conditions:

1.    The Receiver shall cause the final distribution to approved claimants to be completed in accordance with the Claims Order and Distribution Plan;

2.    The Receiver shall complete the tasks outlined in this Motion, including the preparation of tax returns, and the payment of actual fees and expenses of the Receiver and her professionals;

3.    In accordance with the Distribution Plan, following 120 days after the final distribution to claimants, the Receiver shall turn over to the Bureau any balance of funds; and

4.    Within 180 days after the final distribution to approved claimants has been made, the Receiver shall file a declaration with the Court providing a final accounting regarding use of the Reserve funds, along with an order discharging the Receiver ("Discharge Order"), in the form attached hereto as **Exhibit A**, which Discharge Order may be entered by the Court without further notice or a hearing.

**III.    ARGUMENT**

**A.    Broad Equitable Powers of the Court**

"The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws.  Rather, the authority derives from the inherent power of a court of equity to fashion effective relief."  *SEC v. Wencke*, 622 F.2d 1363, 1369

(9th Cir. 1980).  The "primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors."  *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986).  As the appointment of a receiver is authorized by the broad equitable powers of the Court, any distribution of assets must also be done equitably and fairly.  *See SEC v. Elliot*, 953 F.2d 1560, 1569 (11th Cir. 1992).

District courts have the broad power of a court of equity to determine the appropriate action in the administration and supervision of an equity receivership.  *See SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005).  As the Ninth Circuit explained:

> A district court's power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad.  The district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership.  The basis for this broad deference to the district court's supervisory role in equity receiverships arises out of the fact that most receiverships involve multiple parties and complex transactions.  A district court's decision concerning the supervision of an equitable receivership is reviewed for abuse of discretion.

*Id.* (citations omitted); *see also Commodities Futures Trading Comm'n. v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) ("This court affords 'broad deference' to the court's supervisory role, and 'we generally uphold reasonable procedures instituted by the district court that serve the[e] purpose' of orderly and efficient administration of the receivership for the benefit of creditors.").  Accordingly, the Court has broad equitable powers and discretion in the administration of the receivership estate and disposition of receivership assets.

## B.  Conclusion of Receivership and Discharge of Receiver

Federal District Courts presiding over federal equity receiverships have broad power and wide discretion in the supervision of the same.  *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986).  Their power and discretion includes the authority to "make rules which are practicable as well as equitable."  *Id.* at 1039 (quoting *First*

1   *Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)).  In this case,

2   the Court's supervision of the receivership is guided by these same rules.

3       The Receiver has diligently carried out her Court-ordered duties, including

4   assuming control of the enterprise, marshalling and selling assets, performing a

5   forensic accounting, pursuing claims, providing detailed reports to the Court,

6   conducting a claims and distribution process, and if this Motion and the fee

7   applications filed herewith are granted, ultimately returning approximately $700,000

8   of Pensioner overpayments and distributing nearly $3.4 million for a grand total

9   Investor recovery of approximately $13.8 million, which amounts to at least a

10  55.875% and on average 57.2% recovery on the total funds invested.  As there is no

11  further material net benefit to be gained from maintaining this receivership (meaning

12  we are now at the point where monthly collections are not anticipated to exceed

13  administrative expenses), the Receiver requests that she be discharged and the case

14  be closed, effective upon completion of the final closing tasks as described in

15  Section II above.

16      It should also be noted that the Receiver has collected approximately

17  $1.4 million from Pensioners since October 2016, a sum total of $100,000 more than

18  anticipated at that time when the Receiver's forensic accounting was completed.  The

19  estimated collectability of $1.3 million at that time was based on the defaulted and

20  bankrupt Pensioner numbers.  Ultimately, nearly 30 contracts were affected by

21  Pensioner bankruptcy filings and nearly 50 contracts were defaulted, representing

22  approximately 25% of the 305 Pensioner contracts.

23      Effective upon completion of the closing tasks, the Receiver requests the

24  Discharge Order (attached hereto as Exhibit A) be entered, which order discharges

25  the Receiver and fully releases the Receiver and counsel of: (i) all duties under the

26  Appointment Order, and (ii) any and all claims and liabilities associated with the

27  case and the Defendants.  In addition, the Receiver asks the Court to approve and

28  ratify all actions taken by the Receiver and her professionals in the performance of

1  the Receiver's Court-ordered duties.  The Receiver further requests the Court retain

2  exclusive jurisdiction over any and all new actions or claims related to the

3  receivership or work done by the Receiver and her professionals to carry out the

4  Receiver's Court-ordered duties.  It is necessary and appropriate to issue the

5  requested "conditional" discharge order.

6  ### IV.    MEET AND CONFER

7  The Receiver has met and conferred with counsel for the Bureau and counsel

8  for the Superintendent and has been advised the neither the Bureau nor the

9  Superintendent have any opposition to the relief requested herein.

10  ### V.    CONCLUSION

11  For the foregoing reasons, the Receiver respectfully requests the Court grant

12  the Motion, authorize the Receiver to take the steps necessary to close the

13  receivership as laid out herein, and issue the proposed Discharge Order upon filing of

14  the Receiver's final declaration providing her final accounting of reserve funds.

16  Dated:  February 27, 2019

17  By: _____
    KRISTA L. FREITAG
    Receiver

19  Dated:  February 27, 2019

    ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP

    By: _____ /s/ Edward Fates
        EDWARD G. FATES
        Attorneys for Receiver
        KRISTA L. FREITAG

# EXHIBIT A

ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
DAVID R. ZARO (BAR NO. 124334)
TIM C. HSU (BAR NO. 279208)
865 South Figueroa Street, Suite 2800
Los Angeles, California 90017-2543
Phone: (213) 622-5555
Fax: (213) 620-8816
E-Mail: dzaro@allenmatkins.com
        thsu@allenmatkins.com

ALLEN MATKINS LECK GAMBLE
    MALLORY & NATSIS LLP
EDWARD G. FATES (BAR NO. 227809)
One America Plaza
600 West Broadway, 27th Floor
San Diego, California 92101-0903
Phone: (619) 233-1155
Fax: (619) 233-1158
E-Mail: tfates@allenmatkins.com

Attorneys for Receiver
KRISTA L. FREITAG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau and Linda A. Lacewell, Acting Superintendent of the New York State Department of Financial Services,<br><br>        Plaintiffs,<br><br>        vs.<br><br>Pension Funding, LLC; Pension Income, LLC; Steven Covey; Edwin Lichtig; and Rex Hofelter,<br><br>        Defendants. | Case No. 8:15-cv-1329<br><br>**[PROPOSED] ORDER DISCHARGING RECEIVER AND CLOSING RECEIVERSHIP**<br><br>Ctrm.:     10A<br>Judge:    Hon. Josephine L. Staton |

1    The Court having considered the Declaration of Krista L. Freitag Regarding

2  Accounting of Reserve and Completion of Closing Tasks, and good cause appearing

3  therefor, IT IS HEREBY ORDERED as follows:

4    1.    The Receiver is discharged of all duties under the Order Entering

5  Stipulated Preliminary Injunction, Appointment of a Receiver, and Related Matters

6  (the "Appointment Order") (Dkt. No. 61), and subsequent orders of the Court.

7  Pursuant to the discharge, the Receiver is released from any and all claims and

8  liabilities associated with the receivership, the receivership entities, and the

9  individual defendants named in this action.

10    2.    All actions taken by the Receiver and her professionals in performing

11  the Receiver's Court-ordered duties under the Appointment Order, and subsequent

12  orders of the Court are approved and ratified.

13    3.    The Receiver is discharged from any further responsibility for payment

14  of liabilities of the Receivership Entities.

15    4.    The receivership is closed.

16    5.    Jurisdiction over all disputes, claims, and causes of action arising from

17  or relating to this receivership case, is reserved in this Court.

18

19  Dated: _____          _____

20                                           Hon. Josephine L. Staton
                                             Judge, United States District Court

21

22

23

24

25

26

27

28

LAW OFFICES
**Allen Matkins Leck Gamble**
**Mallory & Natsis LLP**

881453.01/SD                    -2-                    Exhibit A, Page 23